(Cuyahoga County Probate Court.)

In the Matter of the Estate of WILLIAM S. JONES, on Applciation to Probate Spoliated Will.

*Probate of spoliated will—What evidence admissible on application to probate spoliated will.*

---

WHITE, J.

The matter of the estate of William S. Jones, application to probate what is claimed to have been a spoliated will, comes before the court now on a very important question; one that, so far as the practice of the court is concerned, so far as the rights of parties are concerned, and in view of the amount involved, and the interest elicited by the proceedings this far, involves very grave consequences. I am free to say that I have a deep and abiding appreciation of the importance of this case. It is one that has called for searching and exhaustive argument by counsel, and I believe that the questions presented, in the exact attitude in which they stand, are presented now for the first time in the state of Ohio. So that in any light in which this matter may be viewed, it is an exceedingly important matter, and one that should receive at the hands of the court a calm, conscientious, careful and dispassionate disposition.

It is a case that has excited a good deal of feeling. It is a case out of which a serious domestic conflict appears to have been evolved; in which serious charges are made, involving the good faith in the most deli-

cate and close relationships; and if there ever was a case that ought to be dealt with by a court under the sanctions of the gravest possible sense of responsibility and concern, this is the case of all others.

After all, however, the questions presented are questions of law to be determined very largely in an effort to apply and administer the statute. And while the court should keep in mind all these important concerns and interests involved, that it may be dispassionate and reasonable, and while it should not participate in any way in this manifest intense interest, any farther than to be steady and cautious and careful in every consideration, it still comes to the court, and must be viewed from the standpoint of the court, without respect to the parties, any further than their rights and interests may be involved in a legal controversy. It is a legal question to be decided upon legal grounds. It is not to be considered as a moral question, a question of domestic morals, nor yet as a question to be decided because of the character and reputation and standing of parties involved in it. These things are not to be lost sight of, but after all we must find the path that the law has pointed out, and when once found by a conscientious search, and by the best efforts the court can make to arrive at a just conclusion, that pathway must be followed with absolute fearlessness, and without reference to the possible immediate consequences that may result.

What is the question presented? This is an application to probate what is claimed to be the spoliated will of William S. Jones. The will is presented by the proponents of the will, the proponents being, as far as the record is concerned, the Children's Aid Society, Mary H. Campbell, and the Lakeside Hospital; these are the ostensible proponents of this will.

The testimony found on the presentation of the will itself disclosed the fact, patent upon the face of the will, that some person at some time under some circumstances, made an effort or attempt to destroy the will. It is not represented in so complete and perfect form as wills are usually presented to the probate court for probate. And the question is at once raised on the profert of such a paper, as to how it became thus mutilated, and by whom was it put in the condition in which it is found. It is not going too far to say that in this case there is no charge against any third person or pretense that any third person delt with this will to put it in the condition that it is in which reference to its being revoked, except the testator himself. It is said, and I think it is not going too far in the way of deciding this question, that Mr. Jones himself did what was done, so far as removing his signature from this paper in two places, the will and the codicil. in concerned; but the question is whether at that time he had testamentary capacity, or was in a mental condition so as to be able, under the law, to make a will; or, to be more exact, was he incapable of making a will at that time, by reason of insanity.

We look at this will to ascertain who are interested in it, so far as the devisees or legatees are concerned, and among other legatees in the will is the Honorable E. T. Hamilton.

The proceedings began by the introduction of the attesting witnesses to this will. After they had been examined by the proponents of the will through counsel, counsel appearing for E. T. Hamilton and announcing to the court that they appeared for him, sought the opportunity to further examine the witnesses called—the attesting witnesses called by the proponents. To the examination on behalf of these counsel the proponents interposed an objection, and the conclusion to which the court came in passing upon that objection allowed an examination to be made of not only the witnesses, but all other witnesses called, and whose testi-

mony was taken at the instance of the proponents of this will. That rule
was established upon that objection. It was followed, an examination
was had by counsel representing Judge Hamilton, of a somewhat lengthy
character, consuming considerable time, an examination, too, that was
searching and rigid touching the subject-matter of the testimony in chief
given by these witnesses called out by the proponents.

Now, the court must take cognizance of the course of this proceeding.
While the court made the rule that justified this examination on the part
of the representatives of Judge Hamilton, and while the court makes no
criticism upon that at all, the fact as to the course of examination has
some bearing upon the question now to be decided; provided the meaning
of this statute, sec. 5946, is that a person interested as a legatee or de-
visee in the will itself, is so interested in having such will admitted to
probate as that he may call witnesses. In my judgment this question
must be decided; first, from the character of this proceeding, its legal
status arrived at, from a close exmination of these statutory provisions as
construed by the Supreme Court of Ohio and other courts; and, secondly,
from a general consideration as to the rights of parties or persons in legal
proceedings.

What is the nature of the proceeding to probate a will? It has been
said here, and well said, that the laws and statutes of England prescribe
two forms in which a will may be presented for probate to the probating
authority, be it the registrar in probate, or a judicial officer; and the first
and simplest form is for the executor to produce the will before the pro-
bating officer and make application for its probate, without giving notice
to any person interested, and even giving, by deposition or affidavit, this
own testimony or the testimony of the attesting witnesses to the will.
That is a form which is purely and simply ex parte. No notice is re-
quired to any person who might be interested in the procedure to probate
the will. Another form which is tolerated in England, and which I be-
lieve is provided now by the statute of 1857 called the present "Wills
Act," the proponent having the election may have persons either sum-
moned or cited who are interested or may be interested in the procedure
to probate the will, to appear on the day fixed for probate, and then and
there such persons have a right to appear and be heard by testimony and
by counsel in the proceeding to probate the will.

Now, the test of the character of the procedure, as to whether it is,
in the lanugage of the law, in the "common form," "non-contentious,"
or in the "solemn form," "contentious," is largely decided or largely to
be determined by the fact as to whether persons are cited or summoned
or notified to appear to such application to probate the will. I may be
excused for reading in this connection a paragraph of a text book upon
the subject of the administration of estates—1 Woerner on the Adminis-
tration of Estates, paragraph 217:

"The English distinction between the common or ex parte probate
and the probate in solemn form, or per testes, has already been men-
tioned. In some of the American States, the only method of probate
provided for is the original proceeding in the probate court, which, as it
requires citation or notice to all the parties interested and a regular trial
of the issue of devisavit vel non, with trial by jury under the direction of
a judge, is substantially a proceeding in solemn form. In others, however,
the proceeding in solemn form is materially different from that pirm-
arily resorted to in the probate court, and may in some instances be had
in the probate court also, but must in others be pursued in common law
or chancery courts. The chief distinction here, as in England, is the
necessity of notice or summons to all the parties in interest in the plenary

proceeding, while the other is generally ex parte.    Another rule is, that upon a contest, or caveat, where probate in solemn form is required, all the attesting witnesses competent to testify, and within the reach of the process of the court, must be examined.    But this rule is not a universal one; there are cases in some of the states in which, on proceedings at law for the probate of a will, the testimony of one or two subscribing witnesses out of a great number was held sufficient to establish it without calling or examining them all.''

The author then goes on to discuss the different rules in the different states.    But further, this author undertakes to state what the statutory provisions of some states are with reference to proceedings to probate a will, and while it may not bear directly upon this question, by way of introduction, and as approaching it, I will beg to read a paragraph as follows:

''Sec. 215.    In some of the states, however, there is still a distinction observed as to the conclusiveness of such a probate''—the conclusiveness of the judgment of the court, as to whether the judgment of the court is binding upon all persons who are required to be notified under the statute. ''But the distinction between the several methods of probate, variously designated as the 'common' contrasted with the 'solemn' form, the 'noncontentious' with the 'ocntentious,' or the 'ex parte' probate with the probate 'per testes,' exists in many of them, requiring different forms of proceeding in bringing about the same result secured by the English statute.    Courts of probate have original exclusive jurisdiction in all of the states to take probate of wills in the common form, where there is no notice to any of the parties, or, if parties are cited or notified by publication, they either fail to appear, or, appearing, make no objection.    In some instances the same class of courts has also jurisdiction to cite parties in interest, either upon demand of the executor or other person propounding the will, or upon objections being made or caveat filed, and in such case grant probate in solemn form, which then is conclusive.''

''Thus in California, Delaware, Florida, Georgia, Maryland, Mississippi, Nevada, Nebraska, New Jersey, New Hampshire and South Carolina, the probate in common form may be contested within a limited time, and probate in solemn form, with notice to all interested parties, had in the probate court.

''In Alabama, Colorado, Illinois, Indiana, Kansas, Kentucky, Missouri, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Texas and West Virginia the probate originally obtained ex parte, or in common form, in the probate court, may be contested either in chancery or by action in a court of law; and the proceedings in such a court constitute the probate in solemn or full form, or, as is sometimes said, per testes.

''In the states of Arkansas, Iowa, Maine, Massachusetts, Michigan, Minnesota, Oregon, Rhode Island, Vermont and Wisconsin the probate obtained in the probate court seesms to have all the force and validity of a probate in solemn form, and is conclusive, both as to real and personal estate, if not appealed from or annulled in equity for fraud, or some cause which gives equity courts jurisdiction over judgments at law.''

So that, as this writer says in substance, there is a great diversity in the states as to the character and nature of this proceeding to probate a will.

Now, the question here is, first of all, whether the proceeding to probate a complete will, which can be produced intact in a complete form before the court, is, under the laws of the state of Ohio, the same, so far as the procedure is concerned, the scope of the inquiry, the field of testi-

mony and the right to call witnesses, as the proceeding to probate a spoliated will as provided by statute.

Now, in order to decide that question we must look at some of these tests. We must look at some of the decisions of the Supreme Court of Ohio, for, after all, this question must be decided by our own courts. You can get very little light from any authority that can be found in any of the other courts of the United States, except as you may find a general discussion upon the subject. But almost always these decisions depend upon the peculiar phraseology and provisions of their statutes with respect to these proceedings. I have examined a great many of these authorities, followed out several of these text writers, and I fail to find any case which throws very much light upon the position here. There is a case in Wisconsin where, as is said by this text writer, they have the mixed form of probate, in the 44th Wisconsin Reports, in the matter of O'Dell et al v. Rogers, in which a little discussion is had of this matter, bearing somewhat upon the question. I read from page 169:

"The only form of probate in our practice is the solemn form, of which all parties interested must have notice, or they are not bound; but the decree is final and conclusive as to all persons having notice. In some of the states it assimilates to the practice in common law courts, and an issue of devisavit vel non is made up, to which persons interested appear and file a caveat, and the issue may be tried by a jury; and it is held in such cases that the proceeding is in rem, to which persons interested may appear or be notified to appear, and if they appear or consent to the proceeding, they are bound by the decree, which, to all such parties and their privies, is final and conclusive."

This matter of the procedure to probate the will, as is very natural, came before the Supreme Court of the state of Ohio before the present constitution of our state was adopted, when the Supreme Court was differently constituted from what it is now; and in several authorities the statutes then in force were settled and construed, in the 8th Ohio Reports, and in one other which I do not now remember. The statutes also prescribing this proceeding have grown up gradually in the state of Ohio. Formerly a spoliated will could not be probated unless the court should be satisfied from the proof offered that the will was in existence "subsequent" to the death of the testator. Afterwards that statute was amended, so that the statute as it now stands was an outgrowth, a development, an evolution. Formerly perhaps notice was not required, perhaps that has been added. I am not quite clear about that; but at all events this provision of the statute, sec. 5944, prescribing the power and jurisdiction of the probate court in matters of spoliated wills, was amended not very long ago and long after these first provisions in Ohio were made. Now, it is provided that "the probate court shall have full power and authority to admit to probate any last will and testament which such court may be satisfied was duly executed according to the provisions of the law upon the subject in force at the time of the execution of such will and testament, and not revoked at the death of the testator, when such original will has been lost, spoliated or destroyed, subsequent to the death of such testator." The law stopped there. It was construed by the Supreme Court, in the matter of Sinclair's will, 5 Ohio St. Rep. 291, Judge Swan delivering the decision, and it was held that unless the testimony satisfied the court that the will was in existence subsequent to the death of the testator it could not be probated as a spoliated will.

Now, this was added: "Or after the testator has become incapable of making a will by reason of insanity, and it cannot be produced in court in as a full, ample and complete a manner as such court now admits to pro-

bate last wills and testaments, the originals of which are actually produced in court for probate."

So that, to get the full force and effect of the holdings of the Supreme Court, we must come down to a date subsequent to the adoption of our constitution, and consider these cases in the light of the growth of these provisions, because they have been gradually growing.

Sec. 5945 is partially relied upon by counsel representing Judge Hamilton, legatee, as fixing somewhat the character of this proceeding and making it, by a rule of law that is well recognized, that in a sense at least it is adversary in its character. That section is as follows:

"Sec. 5945. In all cases where application shall be herefater made to the probate court to admit to probate a will duly executed as aforesaid, and which has been lost, spoliated or destroyed, as aforesaid, it shall be the duty of the party seeking to prove the same, to give a written notice to all persons whose interest it may be to resist the probate, and who reside in the county where the testator resided at the time of his death, or to their agent or attorney, five days before the day on which such proof is to be made, or to give notice, by publication in a newspaper printed in the county, thirty days before the day set for hearing such proof."

This is sec. 5945, and it is said that the test to be made, partly at least, in this case, as to what is meant by sec. 5946, providing the course of the examination of witnesses, must be determined in the light of this statute, which makes it a pre-requisite condition, a condition precedent, a jurisdictional condition, and this notice shall be given to persons who may be interested to resist the probate, who reside in the county.

Now, this notice is to be given, as the terms of the statute seem to imply, not by the court, but by the proponents of the will. It is not made, in form at least, a process of the court. It is not a summons, by which process of the court under the law, a person is compelled to appear and answer to an action or proceeding; but it is a notice to be served by the party. And yet the Supreme Court has held, in the 26th Ohio St.— a case discussed very much in the inferior courts, before it reached the Supreme Court, and a case upon which there is some light thrown by the decision of the District Court of Hamilton county—the case of Katherine Baugarth v. Albert Miller et al., that the proceeding was not properly instituted, where there were no persons in the county interested to resist the probate, and consequently no notice was served on such persons unless publication was made as required by this statute for constructive service. And in deciding this case the court make an intimation, nothing perhaps beyond that, but an intimation, and where we are looking for law sometimes we are justly influenced by intimations. The case was decided by the court, not by any particular judge, and the decision is on one page, and it would not perhaps be burdensome to read the whole of it. I may say that in the district court of Hamilton county, Judge Burnett decided the case and he so makes reference to 12 Ohio St., Banning v. Banning, as to intimate that there is a course indicated in that case. This district court case went to the Supreme Court, and that is this case (Baugarth v. Miller et al.) 26 Ohio St., and the court say:

"Sec. 48 of the act of May 3, 1852, relating to wills, provides that 'In all cases where application shall be hereafter made to the probate court, to admit to probate a will duly executed, and which has been lost, spoliated or destroyed, it shall be the duty of the party seeking to prove the same to give written notice to all persons whose interest it may be to resist the probate, and who reside in the county where the testator resided at the time of his death, or to their agent or attorney.' Let us stop

a moment. They are not to be notified personally, but their agent or attorney may be. It is an unusual process to issue from a court, at least to be served upon the agent or attorney; there may be some proceeding of that kind, but I do not remember of any such now. The court thus proceeds: "Five days before the day on which such proof is to be made, or to give notice, by publication in a newspaper printed in the county thirty days before the day set for the hearing of such proof.

"Whatsoever may have been the reasons that induced the general assembly to apply a different mode of proceeding in application to admit lost, spoliated or destroyed wills to probate, from that applied to wills actually produced in court and verbal wills, it is quite clear that, under sec. 48 it would be error in the probate court, upon application, to find and establish the contents of a spoliated will, or admit the same to probate, until notice, in one or the other of the modes required, of the day set for hearing the proof has been given; and we are of the opinion that the section, reasonably construed, requires that where there is no person residing in the county in which the application is made, who is interested in resisting the probate of the will, to whom written notice of the day set for hearing the proof can be given, notice must be given by publication."

Now, this decision leaves the court somewhat in doubt as to what is meant by the expression, "Whatever may have been the reasons that induced the general assembly to apply a different mode of proceeding in applications to admit lost, spoliated or destroyed wills to probate, from that applied to wills actually produced in courts." Certainly the Supreme Court did not, in this case at least, affirmatively say that the proceeding was exactly the same as the probating of a will that could be produced in court. That is about as far as the case goes. It don't say just what the general assembly did mean by it, don't undertake to decide it, leaves it in doubt. But it does say, and it holds, that this notice is important in this, that it would be error for the court to proceed without it, either to be given to the persons inerested to resist the probate of the will residing in the county actually, or their agent or attorney, or by publication. It is a notice too that shall be given five days before the day on which such proof is to be made. The subject matter of the notice is that on such a day, five days ahead at least, proof will be made for the probate of the spoliated will. So that the only intimation that we have from the Supreme Court in regard to that is that it would be error in the court to hear the case without that, and that the legislature, inferentially it must be said, in this opinion of the court, had some motive to change the rule with respect to the proceeding for probating ordinary wills. And that is as far as we can go with that decision. This decision was one quite recent, compared with others.

So that this position, so far as this question of notice is a test of its character, is left in a somewhat undecided state. The notice is that on such a day proof will be made. It is a notice to be served upon "the attorney or the agent" of the person who may be presumed to have an interest to resist the probate of the will. Can it be said that, while that is jurisdictional, as has been held by the Supreme Court, or at least that it would be an error for the court to proceed without that notice, can it be said that that makes the person thus notified a "party" to the proceedings, in the sense of the statute or in the sense of the law as generally understood? A "party" is generally made by some order of the court, or else by some rule of law, having a right thereby to appear. Now, the court's order is evidenced by a summons or a citation. It may be called a notice—I don't know that we can stand on names here at all. The substance of this is, however, not that a person should appear and be pre-

pared to defend—that is not the form of it; the form of it is that "you are notified that on such a day proof will be made to establish a spoliated will," and that notice may be served on an "agent or an attorney." That is the exact situation.   And we undertake to find out what that means as characterizing the leagal nature of the proceeding; we must consider just exactly what the notice is, what its office.   It is left in that way.   It is a necessary step in the probating of a will, but does it follow that when once served upon the persons who are interested to resist the probate of the will, that those persons then become to all intents and purposes "parties," a standing with the rights of parties in the case?

So that we are left to other considerations to determine that subject, I think.   While that may be law, and we ought to give it all the weight that it is entitled to, and especially in the case here, where the court is justified in saying it ought to have all the light that can be got by virtue of the statutes and the law, no one that has ever had any judicial experience but feels the embarrassment and the limitation placed upon him as a court to decide a case·on partial evidence.   And considering this matter in all its general bearings, if there is any way known to the laws of the state of Ohio, either as conferring a discretion upon the court that it can exercise, or establishing the right of any party interested in the estate to appear and produce evidence, a case of this kind is, it seems to me, a case in which such right or such exercise of discretion should obtain.

I have  examined this case with reference to that situation.   This is a judicial proceeding; it is a judicial proceeding upon which the court must act upon evidence and come to a conclusion upon evidence.   And it is embarrassing always to have evidence curtailed and limited, and not sifted and thoroughly examined and with the right to hear all sides of the case sought to be established thereby.   So that I am not disposed at all to narrow this matter from any disposition to shut out evidence; I am rather inclined to broaden, if it could be done, and take any evidence bearing upon this most momentous and important question in this case, as to whether this man by his own rational act destroyed his will and died intestate or not.

But now, coming to a nearer view of the discussion in the Supreme Court of this question, we find that the matter has received consideration in the 4th Ohio St. Rep., and in 5 Ohio St. Rep., and in 12 Ohio St. Rep., and in 23 Ohio St. Rep., and I do not know but some others.   Then it has received attention in the circuit court of the state of Ohio, in the 1st Circuit Court Reports and in the 3d.   These very statutes have come then under judicial construction.   And we must turn to these decisions to find out just what is the law with respect to those statutes and their proper interpretation.

In 12. Ohio St. Rep. a case came before the Supreme Court, the case of Bannng et al. v. Bannng.   It has been commented on by counsel, and it is not necessary for the court to undertake an exposition of this decision.   It is well to say as we go along something about what these cases disclose as to the practice in the probate court heretofore obtaining with respect to the probating of spoliated wills or wills in general.   Now, in this case, which was a case that went from the District Court of Knox County, in 1861, to the Supreme Court, in the statement of facts there occurs this statement:

"Subsequently, Anthony Banning, Jr., a son of the deceased and one of the legatees and devisees under the will, commenced proceedings under the statute for the establishment and probate of the spoliated will, and in July, 1854, the will was, by the order and judgment of the probate court of Knox county, after a protracted contest, established and admitted to probate."

The decision of the court which particularly bears on the point in controversy is found in the first and fourth syllabi:

"1. Where the contents of a spoliated will have been found, admitted to probate and recorded, in a proceeding duly had for that purpose in the probate court, such record is prima facie evidence, in a future proceeding to contest the validity of said will, not only of the due attestation and execution of said will, but also of its contents; and on the trial of the issue whether the will admitted to probate is the last will of the testator or not, the same must stand, unless the jury are satisfied, by a preponderance of proof, that it is not, in substance, the will of the testator."

It should be said with reference to the history of this case that it started originally in the probate court on this propounding of the will, and after a "contest," such as is stated here, at least a "contest" in form, went to the court of common pleas, and then the court of common pleas acting upon it, it went to the district court, and from the district court to the Supreme Court. The fourth syllabus reads:

"4. The spirit of the statute in respect to the establishment of spoliated wills is, to some extent, in odium spoliatoris, and to render the same practically effective, must be so administered. Not every variance between a spoliated will as made, and the will as admitted to probate, will avoid the latter. And here the only variance between them is the difference between a right of way over a strip of land affording access to a farm devised, and a fee-simple estate in the same strip of land, which is nearly worthless, except for the purpose of such way; the variance is not sufficient to avoid the will as admitted to probate."

I read that simply to show that the court decides here a principle as well as a point or points; a principle or practice to be observed in the administration of these statutes, and that is that spoliation, if I understand the Latin here, is odious, or should be odious. The idea is to give such a construction to the statute, or to administer it in such spirit, as to regard the spoliator as an odious person.

Of course, that principle does not obtain here. There is no charge against any third person for spoliating this will; but that the will if spoliated here, was spoliated after this testator became incapable by reason of insanity for making a will.

The court is seeking in this case to find the scope and strength of the judgment of the probate court in establishing this spoliated will. It is passing upon that question as to what is the evidential effect and scope of the judgment of the probate court in probating a spoliated will. And in doing so the court states this, after quoting the charge, which was given to the jury in the contest of the will:

"We can see no error in this charge. It seems to us that it states the law clearly and correctly. The statute is express that the order of probate shall be prima facie evidence, etc., of the 'validity of said will'; that is, the will as established and admitted to probate. The establishment and probate of a spoliated will is no idle ceremony, no matter of mere form, no ex parte proceeding; but, on the contrary, it is a proceeding on full notice, affording ample opportunity for contest."

What is the force and effect of this statement of Judge Brinkerhoff, who pronounced the opinion of the court? Is it a statement that becomes a part of the decision of the Supreme Court, or is it anything more than the statement of the reasons for the judgment given by the judge? Now, he had before him the history of this case, I have no doubt; this case, I mean, that grew out of the attempt to probate the spoliated will in Knox county, which had gone into a long procedure in the probate court, and

had gone through the court of common pleas and the district court, and had a history behind it. In the light of that and with all the history in mind, he makes this statement, and it is claimed that this is the decision of the court, that it comes down with all the sanction and authority of the decision of the Supreme Court of Ohio upon the points as to the character of this proceeding. For the statute at that time, in 1861, was, I think, substantially the same as the statute we have now, with respect to the requirement of notice, and in accord with the provisions of sec. 5946, Rev. Stat.

The Supreme Court had before that passed upon the question of what was admissible in the way of testimony, or at least admissible as to the right of parties to call witnesses in the probate of an ordinary will, a will that can be produced in full form and intact, and that case is decided in 4 Ohio St., and it is one that counsel seemed very largely, in this case, to rely upon as fixing the course of procedure here.

There is a decision in 29 Ohio St. to which I would call attention, not as bearing directly upon this question, but as having some reference to this subject. I refer to the case of Mosier v. Harmon, 29 Ohio St. 220. The syllabus is as follows:

"1. Where a will, executed in due form, is probated and admitted to record on an application within the jurisdiction of the court, error will not lie to review the testimony upon which the order of probate was made.

"2. The mode of contesting the validity of a will thus admitted to probate, as provided by sec. 24 of the probate act, and sec. 19 of the wills act, is conclusive."

In deciding this case, Judge Gilmore states this:

"But this point is only incidental, and there is another ground upon which the decision may be placed, and the proceedings of the probate court sustained."

This case went from the District Court of Ashtabula County, and the points made in error were:

"1. That the probate court erred in admitting said supposed last will and testament to record without the testimony of all the subscribing witnesses thereto.

"2. That the probate court erred in admitting said supposed last will and testament to probate and record in the absence of and without the testimony of one of the subscribing witnesses, and without his absence being accounted for, or without proof of the signature of one of the subscribing witnesses.

"3. That the probate court erred in admitting the will to probate and record on the testimony introduced."

The court of common pleas dismissed the cause for want of jurisdiction, and this ruling was affirmed on error by the district court. By this proceeding the reversal of the judgments of the district court and court of common pleas were sought, on the ground that the motion to dismiss for want of jurisdiction was improperly sustained.

Now, the court say, in speaking of the requirements of the finding of the court in an ordinary course of probating a will by statute:

"If this fact is presumed, then the fifteenth section of the wills act (S. & C. 1618) shows that the court had only to be judicially satisfied that such will was duly attested and executed, and that the testator, at the time of executing the same, was of full age, of sound mind and memory, and not under any restraint, in order to require its admission to probate. The record shows that the court found, upon testimony, that the will was executed as required by this section. And the court, having thus acted judicially in a matter over which it had exclusive jurisdiction,

we do not think that this judicial action can be reviewed on error, or the judgment reversed on a review of the testimony upon which the order of probate was made in this case.''

The point decided admonishes the court here to be exceedingly carefu about this matter, because, as I understand, error cannot be taken to the judgment of the court here in this matter, either in the progress of the examination, or upon the final judgment.

But that, however, is not to the point. It is said here that the testimony which is commensurate and adequate to establish the judgment in this case, is simply the testimony that would be required to establish an ordinary will. And it is claimed by counsel on behalf of the legatee that in that case it is not essential for the court to find the testamentary capacity of the testator.

Now, there seems to be a contrary statement in the text books on that subject, and it seems to be a somewhat anomalous fact that in the probate of an ordinary will the court can take the opinion of the attesting witnesses as to the testamentary capacity of the testator, and the court must affirmatively find upon the testimony, not by a presumption, which would obtain in the case of making a contract. It seems to be put upon a different ground, and there is a discussion of it in Shouler's book on Wills and on the Settlement of Estates, and in Woerner and other books. They say that it is a proceeding that is somewhat unusual. There is no pre sumption in favor of the sanity of the testator that justifies the court in not taking some affirmative evidence of his testamentary capacity. If I understand this decision, it rather squints that way, though it is not de cided that way. But that is only bearing upon the proposition as to the proof and the character of it that ought to be allowed in a case of this kind.

On the other hand, in this case, if I understand it—and I am not now deciding this case upon its merits or intimating any opinion upon its merits—there is a presumption, if I understand the rules of law, in favor of the testamentary capacity of this man, so far as his ability to revoke this will is concerned. I may be wrong about that, and I state that sub ject to further consideration. But for the purpose of getting at this exact question under consideration, it seems to me that therefore it makes no difference whether in an ordinary will a presumption obtains in favor of the testamentary capacity or not. As I understand it, it is a rule which is peculiar to the probate of an ordinary will, that the court must have some evidence touching that subject; and it is held in these books that the opinion of the attesting witnesses, contrary to the general rule with reference to the opinion of a non-expert witness, may be taken as to whether the testator was possessed of a ''sound and disposing mind and memory.''

But the point in this case is the second point made, ''That the mode of contesting the validity of a will after probate, which is expressly given by statute, is exclusive and must be pursued.''

The provisions of our statutes bearing upon this proposition are stated to be as follows:

The nineteenth section of the wills act declares the effect of the probate as follows: 'If no person interested shall within two years after probate is had, appear and contest the validity of the will, the probate shall be forever binding, saving, however, to infants, married women, and persons absent from the state, or of insane mind, or in captivity, the like period after the respective disabilities are removed.''

''A provision, in language slightly different but in effect the same, was first introduced into the wills act, on February 18, 1808, and, so far

as it affects the question before us, has continued to constitute a part fo
the law of the state, relating to wills, down to the present time.

"The twenty-fourth section of the probate act provides the only mode
of avoiding the effect of the section last quoted, which is as follows:
'When a will shall be admitted to probate in the probate court or court
of common pleas on appeal, any person interested shall have a right to
contest its validity, by petition to the court of common pleas of the pro-
per county; and upon filing such petition, the clerk of the court of com-
mon pleas shall certify that fact to the probate court in which the will
was admitted to probate." I speak of this case because it seems to pre-
scribe an exclusive remedy in the way of contesting a will.

It is said that if witnesses are to be called by a person or persons who
do not join in propounding this will for probate, who are not interested
in having this will admitted to probate, that it opens the door for a full
contest of the will in the probate court. That the manifest policy of the
law of Ohio is that the judgment of the probate court, not being conclu-
sive and final, may be brought in question by an action directly against
it, brought in the common pleas by any interested person to bring the
will and its validity into question; and that this step of probating the
will is but a step in determining the validity of the will; that it is not
conclusive upon the validity of the will, but is only a step. And the
question that has seemed to me to be the important question here is
whether, that being the policy, the scheme of our legislation, affording
the complete remedy by this exclusive right to go into the common pleas
court under this statute and file a petition and raise an issue to be sub-
mitted finally to the jury whther the paper probated is in fact the valid
last will of the testator, does not conclusively imply that the will shall
not be contested in the probate court. Taking the decision in this case,
it appears to the court that such is the only way of contesting a will. I
am not now deciding whether the person now offering the testimony is
the person that is referred to as being interested in having the will ad-
mitted to probate.

Now, we have had this 4th Ohio State Report discussed, and it is not
perhaps necessary for the court to spend very much time in discussing it.
But as I view this case, it is very important to undertsand what the Su-
preme Court has decided in 4 Ohio St. case. It is said that this case is
limited to the case of an ordinary will that can be produced in full.form
as to its contents, and which is intact and apparently absolutely unre-
voked or not mutilated, and in perfect form; that it does not apply to the
case of the probating of a spoliated will. The decision is a broad one,
and yet it is set out in the syllabus, which is contained in two and a half
lines:

"On the proceeding authorized for admitting a will to probate persons
interested to resist the probate of the will are not allowed to introduce
evidence to contest its validity."

There could be no misunderstanding of that decision. It does not
confine it to ordinary wills. It does not refer to wills spoliated, nor does
it refer to wills intact. Perhaps this case, if we look at the facts of it
as we should, was a will that was not a spoliated will  But does the court
intend, taking this decision altogehter, to confine it to a will which was
not a spoliated will?

It may be said that what the court say here with regard to the stat-
utes and their meaning as affecting the probate of spoliated wills, is not
in the decision, but dicta. But the decision, looked at as it should be, I
take it is not intended to be limited to any particular kind of will. What
does the court say?—because the language here used by the judge in the

decision of this case is exceedingly apt, and applicable, in my opinion, to the case at bar.

The section prescribing the duty of the probate court concerning of what it shall be satisfied on the examination of witnesses as to an ordinary will, is contained in section 5926, Rev. Stat.

"The said court shall cause the witnesses to such will, and such other witnesses as any person interested in having the same admitted to probate may desire, to come before such court; and said witnesses shall be examined in open court, and their testimony reduced to writing and filed."

This was the section of the statute which came under judicial cognizance in the decision in this case. "The will of Hathaway, 4 Ohio St." The court say.

"The single question presented for determination in this case is, whether upon an application for the probate of a will, evidence be admissible on behalf of those who resist its admission to probate and contest its validity. And this depends on the construction to be given to sec. 12 of the statute (now sec. 5926) relating to wills, passed May 3, 1852, which is in the following words, etc.," the court then repeats the language of the statute above quoted, emphasizing certain lines of it, and then goes on:

"It is claimed on behalf of the plaintiff in error, that the admission of a will to probate is a judical act; that where evidence is received as the basis of judicial action, it must be received on both sides, and that the language of the above statutory provision, in regard to the witnesses other than the witnesses to the will, when interpreted according to the reasonable intent of the law, must be taken as meaning such other witnesses as any person interested in the subject-matter of the probate of the will may desire, etc.

"It is a maxim of interpretation that, in the absence of ambiguity, no exposition shall be made which is opposed to the express words of the instrument. The language of a statute may be taken in its usual and ordinary signification, and a court is not allowed to make any interpretation contrary to the plain and express letter of the law. Where the sense of a statute is evident, and expressed in clear and precise terms, not leading to conclusions which are absurd and at war with the manifest intention of the law, to go off upon conjectures, and travel in quest of extraneous matters, in order to restrict or enlarge its operation, would be a dangerous and gross perversion of the law itself.

"The language of the statutory provision above recited, is plain and explicit. The witnesses whose examination is authorized on probate of a will, are the witnesses to the will, and such other witnesses as any person interested in having the same admitted to probate, may desire. The meaning would not have been expressed with greater perspicuity, had the phraseology been, and such other witnesses as any person interested in favor of the admission of the will to probate may desire."

I need not read this decision all through, but before it ends it refers to the statute enacted in 1840:

"It is true that the statute enacted in 1840, relating to wills, permitted any person interested, whether for or against the will, to introduce evidence in the proceeding to admit it to probate. But in the enactment of 1852, care seems to have been taken by the use of words explicit and precise, to exclude the absurdity of permitting those who deny the validity of a will, to appear and contest it on the proceeding in the probate court, to admit the will to record. And the provisions of sections 47, 48 and 49," (which I believe to be now contained in sections 5945, 5946, 5947), "which relate to lost, spoliated, and destroyed wills, where notice to those interested to resist the probate is required to be given, special care was

taken in wording the statute, to preserve the harmony and consistency of the proceeding, by authorizing only those 'interested in having the will admitted to probate,' to introduce witnesses for examination.''

This case therefore decided that the proper construction to be placed upon the language of section 5946 Rev. Stat., which, in respect to witnesses that may be called and the persons who may call them, is identical in every respect with the language which is contained in the statute which was judicially under decision in that case. That language is just exactly the same:

''In all such cases, the said court shall cause the witnesses to such will so executed and lost, spoliated or destroyed and not revoked, and such other witnesses as any person interested in having such will admitted to probate may desire to come before such court, and said witnesses shall be examined by said probate judge, and their testimony reduced to writing and filed by him in his court.''

Now, section 5947, as to the scope of the premises upon which the judgment of the court shall pass, reads:

''If the court, upon such proof, shall be satisfied that such last will and testament was duly executed in the mode provided by the law in force at the time of its execution; that the contents thereof are substantially proved, and that the same was unrevoked,'' etc.

The question then is whether this language is construed by the Supreme Court in this decision, as excluding a person who is not interested in favor of the admission to probate of this last will. It seems to me that language could not be used that could be more applicable and precisely definitive as touching this case than the language used by this judge of the Supreme Court in this case of Hathaway's will. If there is any case anywhere in the state of Ohio that by application, or by direct reversal, weakens or annuls the decision of that case, I have been unable to find it. And it leaves but the one question here in my judgment, and that is whether considering the present attitude of Hon. E. T. Hamilton in this case, he comes within the meaning of one who ''is interested in having the will of W. S. Jones admitted to probate'' in the sense of the construction put upon it by the Supreme Court of the state of Ohio.

What is the fact? It is said that a person interested is a person pecuniarily interested, materially interested in the subject-matter of the probate of the will, or in having the will probated; that it is not a question of disposition; it is not a question of emotion; it is not a question of wish or desire, but that it is merely a question of whether the person is interested in the establishment of the will and is to be affected by it in his interest; and that if he is, then he has a right to appear, either ostensibly as a preponent of the will, or has a right to appear and introduce or call witnesses in that proceeding to probate the will.

It is said that when the interest is shown of his being a legatee, it is a conclusive presumption that he is thus interested as the statute provides, and has a right to appear; that it must go to that extent; that that is the logical sequence, that it cannot be limited in any other way; that it simply means that for a person to be ''interested in having the will probated,'' is that he has a legacy or devise in the will, and is thus interested materially, financially, in having the will established. That the court is to look to that fact, and to that fact alone, as opening the door to him to introduce his evidence, and that the court is to take, what seems from all the course of these decisions and the statute is a mere non-adversary and ex parte proceeding to probate a will, and turn it into a contest in which evidence may be heard fully on both sides. Because if the court should begin to hear testimony coming from such witnesses adverse, against the propo-

sition to probate the will, the question is then whether the court should
sit still and hear all that and then shut the other side off from introducing
any rebutting evidence in favor of the proponent.

The provisions of the statute are too plain, and the decisions of the
courts too numerous, to justify this statement that this is a contest of the
will.    I am confronted by this decision on the Supreme Court.    Wise or
unwise, it seems to place us in that attitude where, if the person is not
interested in the sense of desiring to have the will probated, then it seems
to me that he has no standing to call witnesses in this case.

·What is the fact here? Now, we can not undertake to determine what
Judge Hamilton's motives or feelings may be in this case.    That is true.
We can only judge by what we have seen in the progress of this case.    I am
conscious of this legatee's standing, and I weigh these words solemnly, un-
derstanding the relation and the acquaintance that has existed between
this honorable gentleman and myself for a great many years.    What is the
fact?    The court sitting here to hear this case must take into considera-
tion all the facts reasonable and inferences presented in this controversy.
It was announced in the outset that the persons be notified to appear who
might be interested to resist the probate of this will; and Judge Hamil-
ton appeared by counsel as legatee under this will.    Now, while the rule
has been established that counsel appearing for him could aid the court in
searching the witnesses and examining them; what has been the facts
about the course of the examination?    What has been the tendency of the
testimony elicited on the part of this legatee in this examination?    Was
it in aid of the probate of this will—not saying anything about its effect;
but what was its manifest purpose and tendency?    Why, it would not do
to say that this testimony was not elicited here for the purpose of placing
the court where it could see that this will ought not to be probated.

It is said, and there is some force in that argument here, that this
legatee is trying to sustain the last testamentary act of William S. Jones,
to-wit: his revocation; and that in that better sense he is a "proponent"
of the superior will.    There is some force in that.    But after all, what
will is it that is propounded here and sought to be established?    It is the
written paper that is said to have been made sometime in 1891, and the
codicil in 1893, and which is presented here to the court; there can be no
dispute about that.

From the fact that we must weigh and measure and determine the ef-
fect of the act of W. S. Jones in dealing with his will on the 15th of No-
vember, 1893, must it follow that because parties appear and are upon the
side of that "testamentary act" they are not therefore unfriendly to the
preceding one?    Is there any consistency in that?    Now, it seems to me
therefore, that there can not be any doubt, and that this record is too re-
plete with the adverse course of examination that has been made here, not
to manifest what is the desire of Judge Hamilton in respect to probating
this will.    You can only judge from his course of procedure, and the course
of procedure of those that ostensibly and openly represented him here.

That being so, this decision in the 4th Ohio St., establishes a mani-
fest, an insuperable and insurmountable objection to the introduction of
any evidence here by him in favor of resisting the probate, as I must con-
clude, of this will.    And in my judgment, this case now must be submit-
ted, after proper argument, upon the tetimony offered by these proponents,
and the will proposed must stand or fall upon that evidence alone.    The
objection is sustained.

Whereupon counsel for Hon. E. T. Hamilton, legatee under the will,
on his behalf excepted to the holding of the court that he cannot offer evi-
dence, and stated that Judge Hamilton desires to offer evidence of persons

who were perfectly familiar with Mr. Jones' condition, health, and sanity at the time and moment of destroying the will, and before that and subsequent to it; and that the desires to offer the testimony of the medical man who was called in consultation at his bedside before and after the date of the will.

Counsel on behalf of Judge Hamilton also offered to prove the same thing in regard to Mrs. Hamilton, who was notified to come into court and appear; and excepted to the ruling of the court in not permitting such witnesses to be called.

Judge Jones—At the beginning on this case Judge Hamilton filed a written paper offering to become a party to this proceeding, and when the court recognized us as his counsel in the case we did not deem it essential to do that. We will now ask leave to file that application to become a party to the application for the probate of this will.

The Court—You may file it.

Judge Jones—And having filed that application I now, on behalf of Judge Hamilton, renew my motion to be heard by evidence.

The motion was overruled by the court; to which ruling of the court Judge Hamilton, by counsel, then and there excepted.